**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO:**

GLENN BENZION, and all
others similarly situated under
29 U.S.C. § 216(b),

    Plaintiff(s),

v.

MONDELEZ GLOBAL, LLC,

    Defendant.
_____/

**COLLECTIVE ACTION COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**

    Plaintiff, GLENN BENZION ("Plaintiff") pursuant to *29 U.S.C. § 216(b)* files the following Collective Action Complaint for Damages and Demand for Jury Trial against Defendant, MONDELEZ GLOBAL, LLC ("MONDELEZ" or "Defendant"), on behalf of himself, and all others similarly situated, as follows:

**INTRODUCTION**

    1.    This lawsuit arises under the Fair Labor Standards Act ("FLSA") pursuant to *29 U.S.C. §§ 201–216*, to recover unpaid overtime compensation for Plaintiff and all other similarly situated employees who have worked for Defendant throughout the United States during the past three (3) years. Plaintiff brings this action on behalf of himself and other similarly situated individuals who elect to opt-in to this action pursuant to *29 U.S.C. § 216(b)* to remedy Defendant's violations of the overtime provisions of the FLSA.

## PARTIES

2. During all times material hereto, Plaintiff was a resident of Palm Beach County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. During all times material hereto, Defendant was a Delaware limited liability company transacting business throughout the State of Florida, including at locations within the jurisdiction of this Honorable Court. According to www.sunbiz.org, Defendant maintains its principle headquarters in Deerfield, Illinois. Defendant operates in Florida and maintains a registered agent in Florida at 1200 South Pine Island Road, Plantation, Florida 33324.

4. On information and belief, Defendant operates in all fifty (50) of the United States.

5. Defendant was Plaintiff's employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

6. During all times material hereto, Defendant asserted ultimate control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices as they relate to Plaintiff and all similarly situated employees during the relevant time period.

## JURISDICTION AND VENUE

7. All acts and omissions giving rise to this dispute took place within Broward County, Florida, and Palm Beach County, Florida, both of which fall within the jurisdiction of this Court.

8. Defendant regularly transacts business in Palm Beach County, Florida. Jurisdiction is therefore proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

9. Venue is proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. § 1391(b)*.

## CLASS ALLEGATIONS

10. Plaintiff, BENZION, seeks each class members' rightful and proper overtime wages, which is time-and-a-half for all hours over forty (40) worked in each workweek within the past three (3) years, plus an equal amount in liquidated damages, attorney's fees and costs.

11. Defendant employs and has employed within the past three (3) years Sales Service Representatives throughout the United States.

12. During the relevant time period, the Sales Service Representatives were not primarily engaged in the actual making and securing of sales for Defendant. Rather, Sales Services Representatives were primarily tasked with servicing accounts for which Defendant was already a vendor.

13. Defendant uniformly treats and classifies its Sales Service Representatives as non-exempt employees throughout the United States as it relates to the payment of wages and overtime.

14. Plaintiff, BENZION, and class members performed the same or similar job duties as one another in that they worked as Sales Service Representative employees of Defendant within the past three (3) years, they were all subject to the same unlawful pay policies, and they did not receive proper overtime pay for hours worked in excess of forty (40) per week. BENZION and class members were subjected to the same pay provisions in that they suffered or were permitted to work overtime but not properly paid at the correct rate for all hours worked above 40 hours per week. Thus, the class members are owed overtime wages for the same reasons as BENZION.

15. Defendant's failure to compensate employees for all overtime wages as required by the FLSA results from a uniform pay policy or practice that fails to assure payment of overtime in accordance with the FLSA. This policy or practice was applicable to BENZION and class members. Application of this policy or practice does not depend on the personal circumstances of

BENZION or those joining this lawsuit.  Rather, the same policy or practice extended to the entire company, which resulted in the non-payment of overtime for hours over forty (40) to BENZION and further applies to all class members.  Accordingly, the class members are properly defined as:

> **All Sales Service Representatives who worked for MONDELEZ GLOBAL LLC in the United States within the previous three (3) years of this Complaint who were subject to the company-wide policy of performing at least 38.5 hours of work in the field each week, at least 2.5 hours of administrative work during each workweek, and additional work on the weekends for the benefit of the employer and for which they were not properly compensated**.

## GENERAL ALLEGATIONS

16. Defendant, MONDELEZ, is a global snack food company that provides goods and products to over one hundred fifty (150) countries throughout the world.

17. Defendant, MONDELEZ, has operated in the State of Florida during the past three (3) years.

18. Upon information and belief, Defendant, MONDELEZ, employs over eighty thousand (80,000) individuals, worldwide, including Plaintiff and similarly situated Sales Service Representatives.

19. Plaintiff was hired by Defendant, MONDELEZ, and assigned the title of Sales Service Representative, to perform merchandising services during all relevant time periods hereto.  The merchandising services performed by Plaintiff, and all others similarly situated, were performed incidental to the accounts and sales already established by MONDELEZ to its existing client base.

20. Plaintiff, and all others similarly situated, were not tasked with "closing" any sales for MONDELEZ.  Rather, Plaintiff, and all others similarly situated, were chiefly tasked with merchandising and servicing the already existing accounts for Defendant.

21. Defendant, MONDELEZ, employed hundreds of Sales Service Representatives throughout the United States during the same time period and required these employees to perform the same or substantially same merchandising duties and responsibilities as Plaintiff.

## FLSA COVERAGE

22. During all times material hereto, MONDELEZ was covered under the FLSA through enterprise coverage, as MONDELEZ was engaged in interstate commerce during all time periods in which Plaintiff, and all similarly situated individuals, were employed. More specifically, during all times material hereto, MONDELEZ employed at least two (2) or more employees who regularly handled goods and/or materials on a constant and/or continuous basis that traveled across state lines, including, but not limited to the following: cellular telephones, computer equipment, notepads, automobiles, paper, office supplies, pens, printers, and other goods and materials.

23. Plaintiff's work for MONDELEZ was actually in or so closely related to the movement of commerce while he worked for MONDELEZ that Plaintiff, and all similarly situated employees, are covered under the FLSA through individual coverage. Plaintiff, and all similarly situated employees, regularly and recurrently used the instrumentalities of interstate commerce in furtherance of their work. More specifically, Plaintiff regularly performed functions with clients across state lines utilizing telephones, computers, machinery, materials, and supplies. During all times pertinent to his employment, Plaintiff was required to regularly and recurrently handle and/or service goods that were still traveling in the stream of commerce before they reached the ultimate consumer.

24. Upon information and belief, Defendant, MONDELEZ, grossed or did business in excess of $500,000.00 during the years of 2017, 2018, 2019, and on information and belief is expected to gross in excess of $500,000.00 in 2020.

## PLAINTIFF'S WORK FOR DEFENDANT

25. Plaintiff began working for Defendant, MONDELEZ, as a Sales Service Representative in July 1999.

26. Plaintiff's employment with Defendant, MONDELEZ, ceased on February 3, 2020, when Plaintiff elected to take retirement after serving the company for over twenty (20) years.

27. During all material times hereto, Plaintiff was a non-exempt hourly employee of Defendant, MONDELEZ, within the meaning of the FLSA, and was treated by the company as a non-exempt hourly employee during the past three (3) years.

28. On information and belief, Plaintiff's regular hourly rate during the relevant time period was approximately $23.48 per hour.

29. During the employment period, Plaintiff, and all others similarly situated, were instructed, expected to, and otherwise required by Defendant, MONDELEZ, to travel to various grocery stores each workday within a specified geographic location to evaluate and inspect inventory of MONDELEZ products, perform quality check protocols on MONDELEZ's products, and otherwise provide merchandising assistance and feedback from each of the respective grocery stores. The area of focus for Sales Service Representative was to perform merchandising assistance, inspect shelf conditions, set up merchandising displays and shelves, build displays in all areas of grocery stores, take photographs, and ensure the rotation of product on the shelves of grocery stores.

30. During the employment period, Plaintiff, and all others similarly situated, were instructed, expected to, and otherwise required by the Defendant to report their work hours by using software provided by the Defendant.

31. Defendant specifically instructed Plaintiff, and all other similarly situated Sales Service Representatives, that company policy required Plaintiff, and all others similarly situated, to work at least 38.5 hours per week in the field alone.[1]

32. Plaintiff, and all others similarly situated, would begin their workday by travelling from their personal residence to a grocery store within their respective region.

33. During the relevant time period, the time-keeping software implemented by Defendant kept track of the hours worked by Plaintiff **in the field** by using GPS software that tracked the Plaintiff's location.

34. In addition to the GPS time tracking software, during each workday, the Defendant required Plaintiff and all other similarly situated Sales Service Representatives to manually "clock in" on Defendant's software when they arrived at the first grocery story. Defendant instructed Plaintiff, and all other similarly situated Sales Service Representatives, to not "clock-in" on the company software until they actually arrived at the first grocery store location for that day.

35. During each workday, Plaintiff, and all other similarly situated Sales Service Representatives would visit an average of 4-5 grocery stores throughout their respective regions.

---

1. During Plaintiff's employment period, Defendant referred to "work in the field" as any work performed outside of the Plaintiff's personal residence Monday through Friday, when Plaintiff was on-the-clock. However, "work in the field" does not include "administrative work" or "meeting time" or any work performed by Plaintiff during the workweek or on the weekend.

36.     After finishing the visit to the final assigned grocery store each weekday, Plaintiff, and all other similarly situated Sales Service Representatives, were instructed to "clock-out" from the company's software.

37.     Based upon information and belief, and as reflected in Defendant's payroll and timekeeping records, Plaintiff and all other similarly situated individuals were paid based on the time reflected on the GPS software, not based on their actual "clock-in" and "clock-out" time. Plaintiff and all other similarly situated individuals were required to be paid based on their actual "clock-in" and "clock-out" time.  Accordingly, Defendant's payroll records do not accurately reflect or account for the actual time "clocked-in" and "clocked-out."

38.     Additionally, once Plaintiff, and all other similarly situated Sales Service Representatives, were "clocked-out" from the time-keeping software, they were instructed by the Defendant to return to their home residences to perform additional company required follow-up work referred to by Defendant as "administrative work."[2]  This "administrative work" was a principal employment activity Defendant required Plaintiff to perform.  Accordingly, Defendant knew this work was being performed and enjoyed the benefit of this work being performed by Plaintiff and all others similarly situated.

39.     The additional follow-up "administrative work" was performed "off-the-clock" upon arriving home and was performed in addition to the 38.5 hours of "field work" that Defendant required Plaintiff to work each week.[3]

---

2.     Pursuant to 29 C.F.R. § 785.12, if the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.  *Id.*

3.     The "administrative work" assigned by Defendant constitutes a "principal activity" under the FLSA and therefore should be fully compensable.  *See 29 C.F.R. § 790.8(a) ("The legislative history further indicates that Congress intended the words 'principal activities' to be construed liberally in the light of the foregoing principles to include any work of consequence performed for*

40. Additionally, while working from home "off-the-clock," Plaintiff, and all other similarly situated Sales Service Representatives, would receive e-mail assignments from their supervisors, which required them to perform work for which they were not properly compensated.

41. Plaintiff, and all others similarly situated, were not properly compensated for this "administrative work" because Defendant's company-wide policy and mandate already required Plaintiff, and all others similarly situated, to work *at least* 38.5 hours in the field alone. In addition to the 38.5 hours of work in the field, the Defendant advised Plaintiff and all others similarly situated that it would only pay employees for two and a half (2.5) hours of "administrative work" per week regardless of how much time was actually spent performing this follow-up "administrative work."[4]

42. The "administrative work" was not considered "field work" because the "administrative work" was performed off-the-clock, at the personal residence of Plaintiff and others similarly situated, and not calculated by the company software because the work was not performed in any of the grocery stores.

---

*any employer, no matter when the work is performed"); see, also,* Dooley v. Liberty Mut. Ins. Co., 307 F.Supp.2d 234 (D. Mass. 2004) (Checking e-mail and voicemail, responding to messages, reviewing the day's assignments and those for the following day, and making work-related phone calls – **all of which were performed from the employee's home at the end of the day** - were all part of employee's regular work and therefore compensable under the FLSA).

4. This policy demonstrates a clear and consistent pattern of company-wide wage violations relative to the Sales Service Representatives. Defendant required Plaintiff and similarly situated individuals to comply with the company-wide policy of working at least 38.5 hours in the field. But Plaintiff and similarly situated individuals were also required to perform *at least* 2.5 hours of administrative work from home each week. Based on Defendant's own policy, Plaintiff, and all others similarly situated, were not compensated *at least* one (1) hour of overtime **every single week of their employment**. In reality, Plaintiff performed *at least* 5 hours of administrative work from home each workweek during his employment.

43. During certain workweeks of the employment period, Defendant would instruct Plaintiff and similarly situated individuals that they would not be paid for the "administrative work" they performed from home. This practice of not compensating employees for "administrative work" occurred when Defendant required Plaintiff and similarly situated Service Representative Merchandisers to participate in very lengthy conference calls, referred to as "meeting time." Defendant required Plaintiff and all others similarly situated to use their allocated 2.5 hours of "administrative time" during the time spend engaged in required "meeting time."

44. During these weeks, Plaintiff was nevertheless required to still perform "off-the-clock" administrative work without being permitted to report all administrative work performed, and without being properly compensated for it.

45. Whenever this occurred, Defendant would advise Plaintiff and similarly situated individuals that this was "company policy."

46. Defendant knew, or should have known, that "off-the-clock" work was performed by Plaintiff and similarly situated Sales Service Representatives, but Defendant failed to maintain accurate records of this time, and further failed to properly compensate Plaintiff, and all other similarly situated Sales Service Representatives, at the applicable wage rates for the "off-the-clock" work performed each week.

47. Defendant advised Plaintiff, and all others similarly situated, that they would be paid no more than 2.5 hours per week for any "administrative work" that was performed from their home residence, even though the additional work assigned by Defendant regularly required *at least* 1-2 hours per weekday for Plaintiff (and other similarly situated Sales Service Representatives) to perform.

48. Still, Defendant required Plaintiff, and all other similarly situated Sales Service Representatives to have their cellular phones on throughout the weekend and to regularly respond to calls received from Defendant's clients on the weekend.

49. Each weekend, Plaintiff, and similarly situated individuals, worked a minimum of two (2) hours of overtime that was never recorded.

50. Defendant failed to require Plaintiff to report this overtime but was expressly aware of the overtime work performed by Plaintiff and the putative class and retained the benefit of such work.

51. Because the "administrative time" that Plaintiff was permitted to report was limited to the "administrative time" performed during weekdays, Plaintiff, and all others similarly situated, were never permitted to report the hours they worked on the weekend.

52. Plaintiff, and all other similarly situated Sales Service Representatives worked a **minimum** of 4 hours of overtime each week for which they were not properly compensated at the applicable rate of one-and-one-half times their regular hourly rate.

53. As a result of Defendant's intentional and willful failure to comply with the FLSA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

### COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207

54. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 53 as though set forth fully herein.

55. Plaintiff alleges this action pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*.

56. During the time period relevant to this lawsuit, Plaintiff, and all other similarly situated Sales Service Representatives, worked an average of at least four (4) hours of overtime per week, for which they were not properly compensated.

57. Plaintiff seeks recovery on behalf of himself, and all other similarly situated Sales Service Representatives, for a period of one hundred fifty-six (156) weeks – i.e. 3 years - of employment with Defendant.

58. Plaintiff claims the time-and-one-half rate for each hour worked in excess of forty (40) per week for himself and all others similarly situated.

59. Defendant willfully and intentionally refused to pay Plaintiff's overtime wages as required by the FLSA as Defendant knew of the overtime requirements of the FLSA and recklessly failed to investigate whether Defendant's payroll practices were in accordance with federal law.

60. Accordingly, the statute of limitations in this action should be three (3) years as opposed to two (2) years.

61. Defendant's willful and/or intentional violations of federal wage law entitle Plaintiff, and other similarly situated Sales Service Representatives, to an additional amount of liquidated, or double, damages.

62. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, GLENN BENZION, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, MONDELEZ GLOBAL LLC, and award Plaintiff: (a) unliquidated overtime damages to be paid by the Defendant; (b) liquidated damages to be paid by the Defendant; (c) all reasonable attorney's fees and litigation costs as permitted

under the FLSA; and any and all such further relief as this Court may deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, GLENN BENZION, requests and demands a trial by jury on all appropriate claims.

**Dated this 9th of March 2020.**

Respectfully Submitted,

| | |
|---|---|
| **USA EMPLOYMENT LAWYERS – JORDAN RICHARDS, PLLC**<br>805 E. Broward Blvd. Suite 301<br>Fort Lauderdale, Florida 33301<br>Ph: (954) 871-0050<br>*Counsel for Plaintiff, Glenn Benzion*<br><br>By: */s/ Jordan Richards*<br>JORDAN RICHARDS, ESQUIRE<br>Florida Bar No. 108372<br>*Jordan@jordanrichardspllc.com*<br>*Melissa@jordanrichardspllc.com*<br>*Jake@jordanrichardspllc.com* | **Eggnatz \| Pascucci**<br>7450 Griffin Road<br>Suite 230<br>Davie, Florida 33314<br>Ph: (954) 889-3359<br>*Counsel for Plaintiff, Glenn Benzion*<br><br>By: */s/ Joshua H. Eggnatz*<br>JOSHUA H. EGGNATZ, ESQUIRE<br>Florida Bar No. 0067926<br>MICHAEL J. PASCUCCI, ESQUIRE<br>Florida Bar No. 83397<br>*jeggnatz@JusticeEarned.com*<br>*MPascucci@JusticeEarned.com* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on March 9, 2020.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: